```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

| | |
|---|---|
| **WALTER KIDDE PORTABLE EQUIPMENT, INC.,**   Plaintiff/Counter-Defendant,   v.  **UNIVERSAL SECURITY INSTRUMENTS, INC.**, *et al.*,   Defendants/Counter-Plaintiffs,   v.  **UNITED TECHNOLOGIES, CORP.,**   Third Party Defendant, | **Case No. 08 C 3641**  Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Before the court is the motion of Plaintiff/Counter-Defendant Walter Kidde Portable Equipment, Inc., and Third-Party Defendant United Technologies Corp. (hereinafter collectively, "UTC") to dismiss Counts Five and Six of the First Amended Answer and Counterclaims of Defendant/Counter-Plaintiff Universal Security Instruments, Inc., and USI Electric, Inc. (hereinafter collectively, "USI"). USI responded by seeking leave to amend its counterclaims and submitting a proposed Second Amended Answer and Counterclaims. USI's motion for leave to amend is allowed, and in this opinion the court examines the sufficiency of the antitrust

and unfair competition claims in USI's Second Amended Answer and Counterclaims, an issue which is now fully briefed.

## I. BACKGROUND

UTC has been involved in a longstanding dispute with USI, its competitor in the smoke alarm market, regarding a now-expired patent covering a "hush feature" on smoke alarms. The instant suit was brought in 2003 by a predecessor of Kidde, Maple Chase Co., against USI alleging that USI infringed U.S. Patent No. RE: 33,920. The Maple Chase suit was dismissed when the Patent & Trademark Office (the "PTO") granted a request to reexamine the patent. In May 2008, the patent office issued a reexamination certificate for U.S. Patent No. RE: 33,920 ("the '920 Reexamined Patent"). The '920 Reexamined Patent and its predecessors expired on March 7, 2007.

In June 2008, Maple Chase reinstituted its patent infringement suit against USI. Kidde, a subsidiary of UTC, subsequently was substituted as the plaintiff because it had acquired Maple Chase and Maple Chase assigned the '920 Reexamined Patent to it. USI responded by filing a number of counterclaims and third-party claims against Kidde and UTC, alleging in part that it did not infringe the patent and that, in any event, the patent was unenforceable because it was procured by fraud on the PTO. In its Second Amended Answer and Counterclaims, USI refers to "UTC Fire & Security," which it describes as a "multibillion dollar

division" of UTC. UTC does not make much of this distinction, so the Court will treat references to "UTC Fire & Security" as references to Third-Party Defendant UTC.

Initially, UTC sought dismissal of Counts Five and Six of USI's First Amended Answer and Counterclaims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Count Five alleged an antitrust violation under Section 2 of the Sherman Act and Count Six alleged violations of the Lanham Act, 15 U.S.C. §1125(a), and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq*.

In response, USI argued that its antitrust claim was adequately pled, but sought leave to amend its counterclaims to add specific factual allegations and attached to its response a proposed Second Amended Answer and Counterclaims. USI conceded that its Lanham Act claim was deficient and omitted it from its proposed Second Amended Answer and Counterclaims. However, USI still seeks to pursue an unfair competition claim against UTC under Illinois law based on its allegation that Maple Chase wrongfully coerced its supplier, Allegro Microsystems Inc., into refusing to do business with USI unless USI would agree not to use the built-in hush feature in its smoke alarms.

UTC, in its reply, argues that USI's proposed Second Amended Answer and Counterclaims is deficient. According to UTC, the proposed amended pleading fails to cure the defects in USI's

antitrust claim, and its unfair competition claim is barred by the statute of limitations.

Under Federal Rule of Civil Procedure 15(a), leave to amend should be freely given in the absence of undue delay, bad faith, or undue prejudice to the opposing party. *See Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com'n,* 377 F.3d 682, 687 (7th Cir., 2004). Because the Court finds no undue delay or bad faith on the part of USI and because UTC will not suffer undue prejudice if USI is permitted to amend its pleading, the Court grants USI's request for leave to amend. Accordingly, the Court will consider the sufficiency of the allegations in USI's Second Amended Answer and Counterclaims, an issue which is now fully briefed.

## II.  DISCUSSION

### A.  Standard of Review

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts as true all well pleaded facts in the complaint, and draws all reasonable inferences in favor of the plaintiff. *Hon Hai Precision Industry Co., Ltd. v. Molex, Inc.*, No. 08-5582, 2009 WL 310890, at *1 (N.D.Ill., Feb. 9, 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A complaint need not set forth all of the relevant facts, but it must allege "enough facts to state a claim for relief that is plausible on its face." *Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir., 2008) (quoting *Twombly,*

550 U.S. at 570). "[D]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). For the reasons discussed below, the antitrust and unfair competition claims in USI's Second Amended Answer and Counterclaims meet this standard.

### B. Sherman Antitrust Counterclaim (Counts 5 and 6)

Section 2 of the Sherman Antitrust Act makes it an offense for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. Section 4 of the Clayton Act allows a private right of action for damages. 15 U.S.C. § 15.

In Counts Five and Six of its Second Amended Answer and Counterclaims, USI alleges that UTC attempted to monopolize multiple markets for smoke detectors in the United States. Count Five is brought under *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (1965), which allows a suit under Section 2 of the Sherman Act if the plaintiff can prove the patent was procured by knowing and willful fraud upon the PTO and the other elements of a Section 2 violation are present. Count Six is brought under *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 994 (9th Cir., 1979), which similarly allows for a suit under

- 5 -

Section 2 of the Sherman Act if the patent holder brought its infringement suit in bad faith and the antitrust plaintiff can establish the other elements of an antitrust claim.

Both the *Walker Process* and *Handgards* theories are exceptions to the general rule that a patent holder bringing an infringement suit is immune from antitrust liability. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 56 (1993); *Abbott Laboratories v. Mylan Pharmaceuticals, Inc.*, No. 05-6561, 2007 WL 625496, at *2. (N.D.Ill., Feb. 23, 2007). Once an antitrust plaintiff gets around the immunity issue, which USI has done here by bringing its claim under both *Walker Process* and *Handgards*, it must still meet the antitrust pleading requirements. It is on this issue that UTC challenges the sufficiency of USI's antitrust claim.

The first step a plaintiff must meet in stating an antitrust claim is to satisfy the antitrust injury doctrine. This requires a plaintiff to show that its loss is a result of actions of the defendant that reduce output or raise prices to consumers. *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990); *Stamatakis Industries, Inc. v. King*, 965 F.2d 469, 471 (7th Cir., 1992).

Then, in order to prove attempted monopolization under Section 2 of the Sherman Act, which is what USI alleges in Counts Five and Six of its Second Amended Answer and Counterclaims,

a plaintiff must establish: (1) the defendant engaged in predatory or anticompetitive conduct; (2) with a specific intent to monopolize; and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). In order to determine whether there is a dangerous probability of monopolization, courts "consider the relevant market and the defendant's ability to lessen or destroy competition in that market." *Id.*

UTC puts forth two reasons why USI's antitrust claim fails: (1) USI has not alleged an antitrust injury; and (2) USI has not alleged sufficient facts to show a dangerous probability of achieving monopoly power because USI has not adequately alleged either UTC's market share or any barriers to expansion in the relevant markets.

### 1. *Antitrust Injury*

USI alleges in its Second Amended Answer and Counterclaims that the litigation over the '920 Reexamined Patent limits its ability to expand in the relevant markets by imposing upon it additional costs which USI is forced to pass on to its customers. USI also alleges that those litigation costs are limiting its ability to develop new products, and that pending litigation is forcing it to operate its business "under a cloud of uncertainty that limits its ability to deal with customers and suppliers."

Because antitrust laws were enacted "for 'the protection of competition not competitors,'" it is not enough for an antitrust plaintiff to show that the injury suffered was causally linked to the defendant's behavior. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)). Rather, the injury must be "of the type antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp.*, 370 U.S. at 489. "The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id.*

The parties dispute whether the litigation costs USI is incurring as a result of the instant suit are sufficient to state an antitrust injury. USI cites *Dairy Foods Inc. v. Dairy Maid Products Co-op.*, 297 F.2d 805 (7th Cir., 1961), for the proposition that litigation costs can be an antitrust injury. In *Dairy Foods*, the court of appeals held that the plaintiff milk producer adequately alleged an antitrust injury when it was forced to choose between three unappealing options: ceasing production of milk, defending expensive patent litigation, or accepting a restrictive license from the defendant that would have increased its production costs. *Id.* at 808-09.

UTC responds that USI does not face the "trilemma" outlined in *Dairy Foods*. USI cannot be forced to pay a license fee on future

- 8 -

sales or withdraw from the market because the '920 Reexamined Patent has expired. As a result, UTC argues, USI faces only the prospect of paying litigation costs and damages, which does not constitute an antitrust injury.

However, the holding in *Dairy Foods* was not so narrowly limited. The court added, "[t]he injury is the necessity that defendant make a choice among alternatives each of which has an adverse economic or financial impact on its instant milk business." *Id.* at 808. In this case, USI argues that it faces the alternatives of paying a settlement or litigating the suit, each of which have adverse economic and financial effects on its business and its customers.

Courts have debated whether litigation expenses alone are a sufficient antitrust injury. *See Handgards*, 601 F.2d at 997 (holding that in a suit alleging bad-faith patent prosecution, the costs incurred in defense flow from the antitrust wrong). *Contra, e.g., Brotech Corp. v. White Eagle Intern. Technologies Group, Inc.*, No. 03-232, 2004 WL 1427136, at *6-7 (E.D.Pa., June 21, 2004) (noting that the Third Circuit has not held that litigation costs alone qualify as an antitrust injury).

Significantly, however, in those cases where courts have held that litigation expenses do not constitute an antitrust injury, the antitrust plaintiff has failed to allege any harm to customers. For example, in *Brotech*, the antitrust complaint did not allege

- 9 -

that its litigation costs had any effect on prices or product development. *Brotech*, 2004 WL 1427136, at *7. UTC also cites *Chip-Mender, Inc. v. Sherwin-Williams Co.*, No. 05-3465, 2006 WL 13058, at *5-6 (N.D.Cal., Jan. 3, 2006), for the proposition that litigation expenses do not show the requisite anticompetitive effect. But in *Chip-Mender*, the alleged injury was pled only as "the extent of [its] expenses in countering Chip-Mender's and Mr. Russo's assertion of the patents-in-suit against Sherwin Williams, and in such other ways as the proofs may show." *Id.* at *5. There was no allegation that these expenses harmed competition in the relevant market. *Id.* at *5-6.

Here, USI alleges that the litigation has had an effect on its ability to compete in the market, specifically its ability to develop innovative products and price its products at the most efficient level. This is sufficient to state a plausible claim for relief at this stage of the case.

### 2. *Dangerous Probability of Achieving Monopoly Power*

UTC also challenges USI's antitrust claim on the grounds that it fails to allege that there is a dangerous probability of UTC achieving monopoly power in the relevant markets. In *Spectrum Sports* the Supreme Court held that unfair or predatory conduct, standing alone, is insufficient to make out a claim for attempted monopolization. *Spectrum Sports,* 506 U.S. at 457. According to the Supreme Court, the antitrust plaintiff must also prove the

- 10 -

defendant has market power in a relevant market. *Id.* That is because the purpose of antitrust law "is not to protect businesses from the working of the market; it is to protect the public from the failure of the market." *Id.* at 458. As such, the dangerous probability element can only be satisfied when the antitrust defendant threatens actual monopolization. *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1413 (7th Cir., 1989). That requires a showing that the antitrust defendant "currently has market power and that such market power will tend to approach monopoly power if the alleged unlawful conduct remains unchecked." *DSM Desotech Inc. v. 3D Systems Corp.*, No. 08-1531, 2009 WL 174989, at *7 (N.D.Ill., Jan. 26, 2009).

      a. Lack of Specific Market Share

The parties dispute whether USI must allege UTC's market share at this stage of the case in order to adequately plead a dangerous probability of achieving monopoly power. Nonetheless, in its Second Amended Answer and Counterclaims USI includes the allegation that UTC has approximately 65 percent of the sales in each of several relevant markets in the United States. Those relevant markets are: the residential smoke detector alarm market; the residential ionization smoke detector alarm market; the residential photoelectric smoke detector alarm market; the residential combination ionization/photoelectric smoke detector alarm market; and the residential smoke detector hush alarm market. UTC does not

dispute USI's description of the relevant markets. The Court finds that USI's allegation of a 65 market share is sufficient at this stage of the case. See *DSM Desotech Inc.*, 2009 WL 174989, at *8 (denying a motion to dismiss an attempted monopolization claim where the plaintiff alleged a highly concentrated market in which the antitrust defendant held a 50 percent market share).

### b. Barriers to Entry and Expansion

UTC further argues that USI has failed to allege a dangerous probability of UTC achieving monopoly power because it has not identified any barriers to expansion by either itself or the third main competitor in the market, BRK, if UTC were to attempt to raise its prices or restrict output in the relevant markets. Moreover, UTC argues, the '920 Reexamined Patent cannot serve as a barrier to expansion because it has expired.

The Seventh Circuit has held that market share, while an indicator of market power, is not always determinative so courts must also consider whether barriers to market entry or expansion exist. *Indiana Grocery*, 864 F.2d at 1414. This is because the ultimate inquiry is whether the defendant has, or is close to having, the ability to control total market output and prices. *Id.* In *Indiana Grocery*, for example, the court rejected an attempted monopolization claim because the defendant grocer, while having a significant share of the grocery sales in the relevant markets, could not control the supply of groceries in the market. *Id.* As

the court pointed out, if the defendant had attempted to limit the total amount of groceries sold, a competitor or new entrant could have brought in more groceries from wholesalers. *Id.* For this reason, even where a competitor has a large market share, it still may not pose a dangerous probability of achieving monopoly power if barriers to entry and expansion in the relevant markets are low or nonexistent. *Id.*

The Court notes that the Seventh Circuit has held that questions of whether the defendant possessed the requisite market power frequently are best addressed on a motion for summary judgment or at trial. *Endsley v. City of Chicago*, 230 F.3d 276, 282 (7th Cir., 2000). Dismissal is proper where the antitrust plaintiff "fails to identify any facts from which the court can 'infer that defendants had sufficient market power to have been able to create a monopoly.'" *Id.* (quoting *Hennessy Industries Inc. v. FMC Corp.*, 779 F.2d 402, 405 (7th Cir., 1985)).

Here, USI has identified such facts. In its Second Amended Answer and Counterclaims, USI alleges that the number of competitors in the relevant markets has declined since the mid1980s and only three main competitors remain: USI, UTC and BRK. USI also alleges that the relevant markets have high barriers to entry and expansion because of safety regulations. Specifically, USI alleges that in some localities all smoke detectors in a residence must be interconnected to one another such that smoke detected by

one alarm triggers all the other alarms in the dwelling. Given this requirement, USI alleges, a barrier to providing a hush unit forecloses a seller from competing in these localities. USI alleges that through sham litigation, including its suit against BRK and its threats to Allegro, Kidde has approached a monopoly share of the existing interconnected systems. Those allegations, coupled with UTC's alleged 65 percent market share, are sufficient to state a plausible claim for relief at this stage of the case. *See DSM Desotech Inc.*, 2009 WL 174989, at *7-8 (allowing an attempted monopolization claim to go forward despite the existence of three major competitors in the market).

### C. Unfair Competition Claim

Finally, UTC argues that USI's unfair competition claim, Count Eight in its Second Amended Answer and Counterclaims, is barred by the statute of limitations. The claim is based on alleged threats made by Maple Chase to USI's supplier Allegro. USI alleges that because Maple Chase erroneously and in bad faith told Allegro that USI's integrated circuits were covered by the '920 Reexamined Patent, Allegro refused to do business with USI, causing USI to suffer increased production costs.

A letter from Allegro to USI dated March 7, 2000, in which Allegro said that USI's parts may be covered by the '920 Reexamined Patent, was included with USI's Second Amended Answer and Counterclaims. UTC contends that the date on the letter marks the

date USI became aware of its potential unfair competition claim, so the three-year statute of limitations has run.

However, USI correctly argues that its complaint need not allege facts to defeat affirmative defenses such as a statute of limitations. *United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 628 (7th Cir., 2003). As USI argues, its pleading does not allege when its negotiations with Allegro ended, and it is possible that USI's claim accrued at a later date. Because it is "possible to imagine proof of the critical facts" that would render USI's unfair competition claim timely, the Court will allow USI to plead it. *Id.*

### III. <u>CONCLUSION</u>

For the reasons stated herein, Counts Five, Six, and Eight of USI's Second Amended Answer and Counterclaims are sufficient to state claims for relief and, accordingly, UTC's Motion to Dismiss is denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 10/22/2009